**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL NO. 3:04CV530-H**

| | | |
|---|---|---|
| **WILLIE LEGGETTE and BIO-MEDICAL APPLICATIONS OF NORTH CAROLINA, INC., d/b/a/ BMA OF ALBEMARLE as ASSIGNEE OF WILLIE LEGGETTE,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) ) | |
| **vs.** | ) ) | **MEMORANDUM AND ORDER** |
| **B.V. HEDRICK GRAVEL & SAND COMPANY, a North Carolina corporation, and THE HEDRICK EMPLOYEE GROUP BENEFIT PLAN 1, and ERISA-governed Employee Benefit Plan, and PRIMARY PHYSICIANCARE, INC., a North Carolina corporation,** | ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) ) | |

**THIS MATTER** is before the Court on the following motions and memoranda:

1. The "Plaintiffs' Motion to Compel Discovery" (document #32) and "Memorandum ... Supporting ..." (document #33), both filed August 23, 2005;

2. Defendants B.V. Hedrick Gravel & Sand Company and the Hedrick Employee Group Benefit Plan 1's "Motion for an Abuse of Discretion Standard and Limited Scope of Discovery" (document #34) and "Memorandum ... in Support" (document #35), both filed September 9, 2005;

3. "Plaintiffs' Memorandum ... in Response ..." (document #36) filed September 22, 2005; and

4. "Defendants' Reply ..." (document #37) filed October 3, 2005.

Shortly after filing the Defendants' Reply, defense counsel informed chambers' staff

telephonically that the parties' counsel were attempting to resolve the discovery dispute underlying the subject motions, and relayed the parties' request that the Court hold these motions in abeyance in the interim.

On November 28 and 29, 2005, and in response to telephonic queries from chambers' staff, defense counsel and Plaintiff's counsel, respectively, informed the Court, however, that the parties have not resolved the discovery dispute and requested a ruling on the pending motions.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and these Motions are now ripe for determination.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>grant in part</u> and <u>deny in part</u> both the "Plaintiffs' Motion to Compel Discovery" and Defendants B.V. Hedrick Gravel & Sand Company and the Hedrick Employee Group Benefit Plan 1's "Motion for an 'Abuse of Discretion Standard' and Limited Scope of Discovery," as discussed below.

## I. <u>FACTUAL AND PROCEDURAL HISTORY</u>

This is an action to recover health insurance benefits, damages, and attorneys' fees pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, and the Medicare Secondary Payor Act, 42 U.S.C. § 1395y.

At all times relevant to the Complaint, the individual Plaintiff Willie Leggette was an employee of Defendant B.V. Hedrick Gravel & Sand Company ("Hedrick") and a participant in Hedrick's self-funded Employee Group Benefit Plan 1 ("the Plan"), including the Plan's medical and health benefits. Under the terms of the Plan, "out of network" charges by a hospital are

reimbursable at rate lower than what the Plaintiffs contend was the "customary" 60% rate, and are further subject to a $150,000 cap.

The parties agree that Hedrick served as Plan Administrator, that is, that Hedrick had the final authority and discretion concerning the Plan, in this instance, to determine whether the medical treatment discussed below was "in network" or "out of network."  However, Hedrick retained Defendant Primary Physiciancare, Inc. ("PPI") to serve as "Plan Supervisor" to oversee the Plan's day-to-day operations, including to make initial coverage decisions.

From November 21, 2000 through July 31, 2003, Mr. Leggette received regular dialysis treatments from Plaintiff Bio-Medical Applications of North Carolina, Inc. ("BMA"), at its Albemarle, North Carolina facility.  In exchange for this treatment, Mr. Leggette assigned his rights to health insurance coverage under the Plan to BMA which filed claims for reimbursement directly with the Plan.

Prior to August 8, 2002, BMA had apparently submitted $150,000 in claims for which it was paid  $88,971.45 by the Plan.

Although PPI initially concluded that Mr. Leggette's dialysis treatments were provided "in network," on August 8, 2002, Hedrick informed BMA that it was an "out of network hospital," that the maximum coverage of $150,000 had been reached, and that the Plan would not pay any additional claims.

Nevertheless, BMA continued to treat Mr. Leggette, resulting in more than $800,000 in additional charges.  The Plaintiffs allege that rather than pay as it was required to do under the terms of the Plan, Hedrick instructed BMA to submit those charges to Medicare, in violation of the Medicare Secondary Payors Act.

The Plaintiffs subsequently filed an administrative appeal, which Hedrick denied.

On October 14, 2004, the Plaintiffs filed their Complaint stating ERISA claims for denial of benefits and breach of fiduciary duty against each Defendant, as well as a claim against Hedrick and the Plan for violation of the Medicare Secondary Payors Act.[1]

On April 26, 2005, the Plaintiffs served their "First Set of Interrogatories and Request for Production of Documents and Things" upon the Defendants.  In their final brief, the Plaintiffs concede that these discovery requests are "somewhat broad."[2]  "Plaintiffs' Memorandum ... in Response ..." at 5 (document #36).

On June 13, 2005, Hedrick and the Plan filed their responses to the Plaintiff's discovery requests, but those responses were limited to what those Defendants have determined to be the "administrative record" in this case.

In a letter to Hedrick and the Plan's counsel dated July 6, 2005, Plaintiff's counsel requested that those Defendants supplement their responses with any responsive information or documents, regardless of whether it was part of the administrative record.

On July 8, 2005, PPI filed its responses to the Plaintiffs' discovery requests.  Plaintiffs' counsel credibly alleges that after reviewing PPI's responses, it is evident that Hedrick and the Plan possess information and documents that they considered at the time coverage was denied, but that have not yet been produced.  Indeed, it appears that PPI and Hedrick engaged in significant

---

[1]The Medicare Secondary Payor Act provides for a private right of action against any "primary plan which fails to provide primary payment (or appropriate reimbursement)."  42 U.S.C. § 1395y(b)(3)(A).

[2]Other than the Plaintiffs' contention, discussed below, that these discovery requests seek information related to the factors stated in Booth v. Wal-Mart Stores, Inc., Associated Health and Welfare Plan, 201 F.3d 335, 343 (4th Cir. 2000), the parties have not discussed the specific topics addressed in the Plaintiffs' Interrogatories and Requests to Produce, but instead dispute only whether the Defendants may generally limit their responses to the administrative record.

discussions concerning both the reimbursement rate and Hedrick's decision to overrule PPI's initial determination that the subject medical care was provided "in network," but very little, if any, of that information is contained in the "administrative record" that Hedrick and the Plan have produced to date. See "Plaintiffs' Memorandum ... in Response ..." at 12-14 (document #36).

On July 14, 2005, the Court entered a "Pretrial Order and Case Management Plan," setting the discovery deadline for March 1, 2006, and permitting each party to take six depositions and to serve thirty interrogatories and thirty requests for admissions. See document #30.

On August 23, 2005, and having heard nothing from defense counsel concerning the discovery responses, the Plaintiffs filed the subject Motion to Compel Hedrick and the Plan to supplement their responses.

On August 25, 2005, the undersigned conducted the Initial Pretrial Conference in chambers with the parties' counsel, and noted that some limited discovery is generally allowed in ERISA cases, particularly where, as discussed below, a modified abuse of discretion standard is to be applied, and encouraged the parties to resolve their discovery issues informally.

On September 9, 2005, Hedrick and the Plan filed their "Motion for an Abuse of Discretion Standard and Limited Scope of Discovery," contending that even where a modified abuse of discretion standard applies, discovery should be limited to production of what they characterize as the "administrative record."

In its Response to the Defendants' Motion, the Plaintiff offers to narrow the scope of its written discovery requests, that is, that the Defendants be required to produce supplemental responses related to two issues only: (1) Hedrick's conflict of interest and its reasons for overruling PPI's determination that the disputed medical treatment was "in network"; and (2) the relationship

"between ... [Hedrick's] benefit determination and Medicare's position as secondary payor."

Document #36 at 6.

The parties' Motions have been briefed as set forth above and are, therefore, ripe for determination.

## II. DISCUSSION

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides generally that:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1947). However, a litigant is not entitled to conduct discovery that is intended to harass, annoy, embarrass, or oppress the opposing party. See Fed. R. Civ. P. 26(c).

Whether to grant or deny a motion to compel or to limit discovery is generally left within the district court's broad discretion. See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) (denial of motions to compel reviewed on appeal for abuse of discretion); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988) (noting district court's substantial discretion in resolving motions to compel); and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same).

It is well settled that ERISA plaintiffs are permitted to conduct discovery. See Gunnells v.

Healthplan Services, Inc., 348 F.3d 417, 422 (4th Cir. 2003) (noting that interlocutory appeal had been filed "before the parties completed discovery"); Sedlack v. Braswell Services Group, Inc., 134 F.3d 219, 226 (4th Cir. 1998) (defendant did not produce certain documents until the plaintiff requested production during the discovery period); and Bernstein v. Capitalcare, Inc., 70 F.3d 783, 790 (4th Cir. 1995) ("[d]uring discovery in this lawsuit before the district court, much relevant additional evidence has been developed"). The scope of discovery in an ERISA case is reduced, however, when the defendant is entitled to an abuse of discretion or modified abuse of discretion standard of review (discussed below). Accord Sheppard & Enoch Pratt v. Travelers Insurance Co., 32 F.2d 120, 125 (4th Cir. 1994) (where abuse of discretion standard applied, "assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time"); and Berry v. Ciba Geigy, 761 F.2d 1003, 1007 (4th Cir. 1985).

In determining the applicable standard of review, the Supreme Court has held that "a denial of benefits challenged under [ERISA] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989). Accord Rego v. Westvaco Corporation, 319 F.3d 140, 146 (4th Cir. 2003) (if administrator does not act within scope of discretion conferred, then review is de novo). When an employee benefit plan gives a neutral plan administrator discretion to interpret the language of the plan, the administrator's determinations are ordinarily entitled to deferential review under an "abuse of discretion standard." Firestone Tire & Rubber Co., 489 U.S. at 115. Accord Colucci v. Agfa Corp. Severance Pay Plan, ___ F.3d. ___, ___ (4th Cir. November 28, 2005); and Aliff v. BP America, Inc., 26 F.3d 486, 489 (4th Cir. 1994).

However, when the fiduciary has a potential conflict of interest–because it is both the payor of benefits and the decision maker–the district courts must apply what has been termed the "modified abuse of discretion" standard. Under that standard, the presence of a potential conflict is only one factor considered in assessing the primary inquiry, namely the "reasonableness" of the decision. Bernstein, 70 F.3d at 788.

Thus, where one interpretation of the plan in question will further the financial interests of the fiduciary, the Court's deferential standard must "be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict." Bedrick v. Travelers Insurance Co., 93 F.3d 149, 152 (4th Cir. 1996). Accord Booth v. Wal-Mart Stores, Inc., Associated Health and Welfare Plan, 201 F.3d 335, 343 (4th Cir. 2000) ("fiduciary's conflict of interest, in addition to serving as a factor in the reasonableness inquiry, may operate to reduce the deference given to a discretionary decision of that fiduciary"); and Doe v. Group Hospitalization, 3 F.3d 80, 87 (4th Cir. 1993). In other words, the administrator's decision to deny coverage must be reviewed to determine "whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries." Bedrick, 93 F.3d at 152.

Since Hedrick is granted full discretionary authority to interpret the Plan, but also has considerable pecuniary interest (inasmuch as Hedrick would be obligated to make benefit payments on any approved medical claims), the above described "modified abuse of discretion" standard applies in this case. Under that test, the administrator's decision is reasonable "if it is the result of a deliberate, principled reasoning process and it is supported by substantial evidence." Bernstein, 70 F.3d at 788, quoting Baker v. United Mine Workers of Am. Health & Retirement Funds, 929 F.2d 1140, 1144 (6th Cir. 1991).

In Booth, supra, the Fourth Circuit Court of Appeals stated that when determining whether a plan administrator's decision to terminate or deny benefits is reasonable and based upon substantial evidence, several factors are to be considered, including but not limited to:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

201 F.3d at 342-43. Accord Colucci, ___ F.3d. at ___ (applying Booth factors).

The Plaintiffs contend and the Defendants do not dispute that the Plaintiffs' discovery requests target all but the first two of the Booth factors, with particular emphasis on Hedrick's motives and conflict of interest (the eighth factor). Moreover, where Hedrick had not only a conflict of interest in its decision to deny benefits, but also a conflict with Defendant PPI, its retained Plan Supervisor, concerning whether benefits should be denied, certainly the Plaintiffs are not bound to Hedrick's determination of what constitutes the formal administrative record but are entitled to discover any information known to the Defendants concerning either of those conflicts. Accord Sheppard & Enoch Pratt, 32 F.2d at 125 (where abuse of discretion standard applied, "assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time"). Accordingly, the Plaintiff's Motion to Compel Discovery will be granted as to any responsive documents or other information that the Defendants considered or knew at the time Hedrick denied Mr. Leggette's claim for benefits without limitation to whether Hedrick considers that information to be part of the administrative record or its claims file.

Moreover, the Defendants have not cited, and the undersigned is unaware of, any authority placing a limitation on discovery concerning claims brought under the Medicare Secondary Payors Act. Accordingly, the general discovery principles discussed above apply, and the Plaintiffs are entitled to complete supplemental responses to their discovery requests to the extent that they are reasonably calculated to lead to the discovery of admissible evidence concerning Hedrick's alleged decision to instruct BMA to file a Medicare claim, rather than to pay the medical charges under the terms of the Plan. Accord Fed. R. Civ. P. 26(b)(1); Herbert, 441 U.S. at 177; and Hickman, 329 U.S. at 507.

## III. ORDER

**NOW THEREFORE, IT IS ORDERED:**

1. The "Plaintiffs' Motion to Compel Discovery" (document #32) and Defendants B.V. Hedrick Gravel & Sand Company and the Hedrick Employee Group Benefit Plan 1's "Motion for an Abuse of Discretion Standard and Limited Scope of Discovery" (document #34) are **GRANTED IN PART** and **DENIED IN PART**, that is:

a. On or before January 17, 2006, Defendants B.V. Hedrick Gravel & Sand Company and the Hedrick Employee Group Benefit Plan 1's shall serve verified supplemental responses to the Plaintiffs' "First Set of Interrogatories and Request for Production of Documents and Things," as follows:

_____(1) Concerning the Plaintiffs' ERISA claims, these Defendants shall produce any responsive documents or other information that Hedrick, the Plan, or PPI considered or knew at the time the Plaintiffs' claim for benefits was denied, including information related to Hedrick's conflict of

interest or its decision to overrule PPI's initial eligibility determination; and

(2) Concerning the Plaintiffs' Medicare Secondary Payors Act claim, these Defendants shall produce any and all responsive documents or other information in their possession, custody, or control.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED**.

**Signed: December 1, 2005**

_Carl Horn, III_

Carl Horn, III
United States Magistrate Judge